# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER L. ESHELMAN,                    )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )          02:03cv1990
                                       )
MAGEE-WOMENS HOSPITAL OF               )
UNIVERSITY OF PITTSBURGH MEDICAL       )
CENTER UPMC AND UPMC t/d/b/a/          )
UNIVERSITY OF PITTSBURGH MEDICAL       )
CENTER,                                )
                                       )
                    Defendants.        )

## MEMORANDUM OPINION AND ORDER

October 11, 2005

   Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support thereof (*Document Nos. 17 and 18*) filed by Defendants, Magee-Womens Hospital of University of Pittsburgh Medical Center UPMC and UPMC t/d/b/a University of Pittsburgh Medical Center, the brief in opposition filed by Plaintiff, Walter L. Eshelman (*Document No. 25* ), and the Reply Brief filed by Defendants (*Document No. 28*).

   After careful consideration of the motion, the material in support and opposition thereto, the memoranda of the parties in support and opposition thereto, the relevant case law, and the record as a whole, the Court finds that there is no record evidence such that a reasonable jury could return a verdict for Plaintiff, Walter L. Eshelman, on his federal claims of discrimination under the Age Discrimination in Employment Act , 29 U.S.C. § 621 *et seq.* Therefore, the Court will grant Defendant's motion for summary judgment as to all federal claims which allege age discrimination by Plaintiff, Walter L. Eshelman.

## BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows.

Plaintiff began his employment as Manager of Compensation and Benefits in the Human Resources Department of Magee-Womens Hospital UPMC ("Magee") on September 18, 1998. At that time, Magee was an independent hospital, and the Compensation and Benefits Department was a "freestanding" department. (Tibbot Affidavit at ¶ 3.) At the time of his hire, Plaintiff's position involved the following job functions:

a.   personnel management of staff to include selection, supervision, training, performance evaluations, scheduling and staffing levels;

b.   coordinating hospital-wide compensation and benefit fringe budget process including market research, trend analysis and recommendations;

c.   maintaining benefit programs including plan documents, Summary Plan Descriptions, employee communications, administration and the annual enrollment process;

d.   analyzing current and potential benefits selections for cost competitiveness, efficiency and improvements;

e.   participating in negotiating contracts, selecting new carriers and overseeing ongoing communication and administration;

f.   maintaining legal and regulatory compliance for all benefits programs and for ensuring completion and compliance with all government mandated filing; keeping abreast of pending and new legislation as it pertains to Hospital's programs and initiates notification to Directory, communication to staff and any necessary systems modifications;

g.   initiating development and delivery of new compensation and benefit programs and inservices to increase employee awareness and perceived value;

2

h.      developing or modifying policies, practices or programs based on pertinent trends, changing employee demographics and cost effectiveness strategies;

i.      investigating methods to automate benefits administration and reporting including software enhancements or programming changes;

j.      developing regular financial reporting including administration and reporting utilization analysis and expense projections. Participating with the Director in identifying cost effective alternatives to current or anticipated programming;

k.      overseeing ongoing administration of the Hospital compensation program including review of proposed salary adjustments and updating the Hospital salary structure;

l.      promoting the development of equitable compensation and employment practices and procedures;

m.      consulting with management and employee on compensation questions, unusual situations and business issues impacting wages; and

n.      developing, modifying and delivering compensation communications for Hospital staff including group presentations.

(See Pl's Depo. at p.6:1.14 - p7:1.7 and Magee-Womens Hospital Job Description for Manager, Compensation and Benefits, January 1997 (Date Reviewed)).

In April 1999, Magee and UPMC entered into a merger agreement. Magee and UPMC planned to accomplish the merger within five (5) years. Once the merger was announced, plans were developed to integrate various Magee functions, including human resources, into UPMC. Jane Tibbott, the Director of Human Resources for Magee, who was 53 years of age in 1999, was responsible for developing and recommending integration plans to Linda Antonelli, who was 41 years of age in 1999, the Vice President Facilities Planning and

Support Services for Magee, and seeking approval of the Finance Committee of Board of Directors of Magee.

As a result of the merger, the Compensation and Benefits Department of Magee and its functions were merged into the Compensation and Benefits Department of UPMC.  (Pl's Depo. at p.24:1.8-18, p. 63:1.16-21.)

At the time of the merger, UPMC had approximately 28,000 employees, including casual and temporary staff, and Magee had approximately 2,100 employees, including Magee's research foundation.  (See Affidavit of John Galley, at ¶ 3; Pl. Depo. at p.11:1.15-19.)  In addition, at that time, UPMC had approximately 25,000 pension plan and health and welfare benefits participants and Magee had approximately 1,900 pension plan and health and welfare benefits participants.

The first phase of the integration plan involved transferring most of Magee's compensation functions to the Corporate Compensation office at UPMC, which was directed by Charles Donina; then age 52.  Because Magee was adopting the UPMC compensation program, including UPMC's salary structure, Plaintiff no longer had to manage the performance and analysis of salary surveys or the updating of the hospital salary structure.  Thus, the compensation portion of Plaintiff's job was eliminated and on October 16, 2000, Plaintiff's job description was amended to reflect the elimination of this portion of his job.  (Pl's Depo. at p.8:1.14-9:1.4.)

The second phase of the integration plan included the adoption of UPMC Health and Welfare benefit plans, transferring payroll work to the UPMC Payroll Department, conversion to the PeopleSoft human resources information system, and implementing KRONOS time and

attendance system.  (Pl. Depo. at p.13:1.5-8; Tibbott Affidavit at ¶6.)  A plan was submitted to

the Finance Committee of the Magee Board of Directors on March 28, 2001, which outlined the

impact of the integration. (Tibbott Affidavit, at ¶ 6.)  The results of the decision, as it related to

Magee, included the following:

- Elimination of Magee's payroll system and department of the positions of 2.6 Full Time Employees ("FTEs").

- Adoption of UMPC's Health and Welfare benefit programs eliminated the need for Magee to administer the Health and Welfare benefits, negotiate contracts with vendors, maintain Summary Plan Descriptions, develop employee communications, manage the annual enrollment process, prepare government filings, develop policies or programs based on pertinent trends, and prepare financial reports.

- Initially, approximately 80% of the retirement plans administration would be transferred to the Corporate Retirement Group, managed by Gregory Stoner, then age 35, Director Retirement Benefits.  Mr. Stoner assigned the administration of the Magee retirement plans to Joseph Giacomin, then age 54, Senior Retirement Benefit Specialist, and Mr. Richard McKerrow, then age 28, Retirement Specialist.  Mr. Stoner did not add staff in order to administer the Magee retirement plans.

- Adoption of UPMC pay practices eliminated the need for Magee to develop its own compensation programs and communications.

- The job of Data Coordinator was created to do the employee data entry into the PeopleSoft system and perform audits to insure data integrity; and

- The job of HRIS Specialist was created to oversee the PeopleSoft operations including coordinating system upgrades, development of specialized reports, acts as the liaison with UPMC payroll department to resolve payroll issues and resolve time submission issues with the KRONOS System, automated time and attendance system.

(Tibbott Affidavit, at ¶ 6.)

The PeopleSoft and KRONOS systems were integrated on December 16, 2001.  The new positions of Data Coordinator and HRIS Specialist were filled by individuals employed within Magee's Human Resources Department, at a compensation level substantially lower than the compensation Plaintiff was receiving.  (Pl Depo. at p.67:1.17-21; Tibbott Depo. at p.30:1.13-20.)

Elbea Smith, then age 33, whose payroll specialist position had been eliminated as a result of the integration, and Holly Novak, then age 27, whose benefit assistant position had been eliminated as a result of the integration, were selected to fill the Data Coordinator positions, which were clerical in nature.  Evelyn Gussenhofen, then age 34, whose payroll supervisor position was eliminated, was selected to fill the HRIS Specialist position.

Plaintiff never expressed an interest or applied for either the Data Coordinator or HRIS Specialist positions.

In May 2002, a Human Resources Representative position became available and was posted.  Plaintiff chose not to apply and testified that he would not have been qualified for such position.  (Pl Depo. at p.58:1.6-12.)  Holly Novak applied for and was promoted to the Human Resources Representative position.  In June of 2002, Toni Tesauro, then age 44, whose Benefits Specialist position had been eliminated as a result of the integration, was moved into the Data Coordinator position previously held by Holly Novak.

The third phase of the integration involved moving the administration of the retirement benefit plans over to UPMC. (Tibbot Deposition, p.12:1.8-11).  Magee adopted the UPMC benefit plans and the majority of Magee's pension plans were either frozen or terminated following the merger and the employees of Magee became participants in UPMC's

plans.  (Tibbot Depo. at p.9:1.16-20.)  The last remaining portion of Plaintiff's job was with respect to retirement plans.  Plaintiff retained the responsibility for orienting employees about the plans, filing regulatory information, making arrangements for necessary distributions to employees, maintaining the Summary Plan Descriptions and administering the 457f and 451 plans for the executives and wired monthly contributions to the Central Pension Plan for employees who were members of Local 95, International Union of Operating Engineers. (Tibbott Depo. at p.12:1.8-11.)

The record reflects that on October 24, 2002, Linda Antonelli, Sue McCarthy, Vice President and Chief Financial Officer of Magee, and Jane Tibbott met with John Galley, Vice President of Compensation, Benefits and HRIS at UPMC, and Greg Stoner to discuss the plan for completing the transfer of the remaining administration responsibilities for all Magee retirement plans to the UPMC Retirement Group.

The decision was made that January 1, 2003 would be the effective date to complete the transfer of the remaining retirement plan administrative responsibilities to the UPMC Retirement Group.  From December 2002 until April 2003, Plaintiff worked with Joseph Giacomin and Richard McKerrow to complete the transfer of the retirement plans administration to the UPMC Benefits Department.  (Tibbot Depo. at p.31:1.12-16; Pl. Depo. at p.27:1.22-p.28:1.4.)

By January 2003, approximately 95% of Plaintiff's job had been transferred to UPMC.  By the end of April 2003, the remainder of Plaintiff's functions were also transferred over to employees at UPMC.  (Pl. Depo. at p.26:1.5-10.)

Plaintiff's job was eliminated effective April 29, 2003.  At the time, he was 59 years old.   As part of the elimination of his job, Plaintiff was offered a severance package based upon his position level and years of service.  (Tibbott Affidavit at ¶ 13.)  He was also informed that he was eligible for rehire and was encouraged to view the UPMC website for job openings for which he could apply.

After Plaintiff's position of Manager of Compensation and Benefits was eliminated, Jane Tibbott notified Plaintiff of a Compensation Specialist position opening in the Corporate Compensation Department at UPMC.  Plaintiff spoke to Charles Donina, the Director of Compensation, with regard to the position, but decided to withdraw himself from consideration for the position.  In addition, Jane Tibbott, recommended Plaintiff for the position of Human Resources Director at UPMC St. Margaret.  Plaintiff, however, was not hired for that position.

Plaintiff testified that he understood that his position would eventually be eliminated as a result of the Magee-UPMC merger.  (Pl Depo. at p.56:1.1-5, 13-21.)

On December 29, 2003, Plaintiff  filed a Complaint in this Court in which he alleged wrongful termination against his former employer, Magee Womens Hospital of University of Pittsburgh Medical Center UMPC and UPMC t/d/b/a University of Pittsburgh Medical Center, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* [1]

---

[1]     Plaintiff includes an allegation in his Complaint that Defendants' actions were "part of a plan, practice or pattern of discriminating against older employees which may affect others who are similarly situated to the Plaintiff."  Complaint, at ¶ 18. Plaintiff, however, in his Brief in opposition to summary judgment represents that he "will not pursue at trial any claims for any other Plaintiffs under a 'collective action' theory or otherwise."  Pl's Br. at n.7.  Accordingly, this claim will be dismissed by the Court.

STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-29 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id. (citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury."  *Liberty Lobby*, 477 U.S. at 251-52.

DISCUSSION

As stated above, Plaintiff claims that he was terminated from his employment because of his age, in violation of the ADEA.  Defendants respond that they had a legitimate, nondiscriminatory business reason  for eliminating Plaintiff's position and terminating his employment.   The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 526-27 (3d Cir. 1992), *cert. denied,* 510 U.S. 826 (1993).

9

The ADEA provides that "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to establish a *prima facie* case under the ADEA, a plaintiff is required to establish that (1) he is over 40 years of age;[2] (2) he is qualified for the position in question; (3) he was discharged; and (4) he was replaced by (or the company retained) a sufficient younger person to create an inference of job discrimination.  *Anderson v. Conrail*, 297 F.3d 242, 249 (3d Cir. 2002).

In an ADEA lawsuit, the familiar *McDonnell Douglas* formulation[3] regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment.  *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).   Accordingly, the plaintiff bears the initial burden of presenting a *prima facie* case.

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose.  *Fuentes,* 32 F.3d at 763.  If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative factor in the decision.  *Id.* at 764; *Bellissimo*, 764 F.2d at 179-80.  The plaintiff can either prove this directly, by showing that discriminatory

---

[2]       The protection against age discrimination in the ADEA is "limited to individuals who are at least 40 years of age."   29 U.S.C. § 631(a).

[3]       *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey,* 996 F.2d at 638; *Weldon,* 896 F.2d at 797.

At trial, the plaintiff must prove both that the employer's reason was false and that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763. However, the Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous when attempting to survive a summary judgment. In such situations, the plaintiff need only demonstrate that there are disputed factual issues concerning either (1) whether the proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir. 1994); *Fuentes*, 32 F.3d at 764.

For purposes of this decision, the Court will assume that Plaintiff has met his *prima facie* case. Therefore, the burden shifts to Defendants to articulate some legitimate, nondiscriminatory reason for their decision. Defendants argue that legitimate business reasons exist for their decision to terminate Plaintiff's employment.  Namely, Defendants argue that Plaintiff's position as Manager of Compensation and Benefits was eliminated following the completion of the three-phase integration plan, over an approximate five-year period of time. During the first phase of the integration, which involved the compensation functions, the compensation portion of Plaintiff's job was eliminated. During the second and third phases of the integration, Magee adopted UPMC's Health and Welfare benefit and retirement programs, which eliminated the need for Magee to administer such benefits, negotiate contracts with vendors, maintain Summary Plan Descriptions, develop employee communications, manage the

annual enrollment process, prepare government filings, develop policies or programs based on pertinent trends, and prepare financial reports. Approximately 80% of the retirement plans administration was transferred to UPMC's existing corporate Retirement Group. Adoption of UPMC's pay practices eliminated the need for Magee to develop its own compensation programs and communications.

By the end of April 2003, the last of Plaintiff's functions, which included signing employees up for benefits, explaining how the benefits worked and processing withdrawals and retirements, were also transferred over to employees at UPMC.

Because Defendants have articulated a legitimate, non-discriminatory reason for their decision to terminate Plaintiff's employment, the onus shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendants' stated explanation is pretextual. *Fuentes,* 32 F.3d at 763.

Plaintiff responds that others in his department, whose positions were eliminated, were hired into other positions, yet Defendants failed to offer him these positions. However, the Court finds and rules that there is evidence in the record which demonstrates that Plaintiff was overqualified for those positions and, more importantly, Plaintiff did not apply for or express interest in those positions.

Plaintiff also argues that his job functions were given to Richard McKerrow at UPMC, an individual who is under 40. However, the record reflects that the only job functions that Mr. McKerrow performed as to Magee's plans were ministerial and only took him fifteen (15) minutes per day to perform. *See* McKerrow Affidavit at ¶¶ 3-4. Specifically, such job functions included receiving and processing enrollment forms and performing some

calculations for Magee's 457(f) Plan.  The record also reflects that  Joseph Giacomin, who was 56 years old at the time the Magee plans were integrated into UPMC, took over all other functions regarding Magee's retirement plans.

Courts examining similar factual situations have held that elimination of an employee's position as a result of a merger is a legitimate, non-discriminatory reason to eliminate an employee's position.  *Chambers v. Metropolitan Prop. and Cas. Inc. Co.*, 2002 U.S. Dist. LEXIS 11075 (D. Minn. June 13, 2002) (employer's motion for summary judgment granted in ADEA case where merger resulted in elimination of plaintiff's position); *Minton v. American Bankers Ins. Group, Inc.*, 2002 U.S. Dist. LEXIS 7539 (S.D. Fla. April 24, 2002) (corporate reorganization because of a merger which results in the elimination of a position is a legitimate, non-discriminatory reason for terminating an employee) (*citing Tidwell v. Carter Prods.*, 135 F.2d 1422, 1426 (11th Cir. 1998)).

The Court finds and rules that Plaintiff has failed to demonstrate that Defendants' decision to eliminate his position was guided by anything other than a desire to properly structure the compensation and benefits department according to business needs.  Further, the Court finds and rules that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff's age was a factor in the Defendants' decision to terminate Plaintiff's employment.  Plaintiff has not demonstrated that there was a continuing need for his same services within the reorganized structure of Magee.  It is undisputed that most of Plaintiff's responsibilities were eliminated due to the integration.

Plaintiff has simply failed to present any evidence to show that age was a factor in Defendants' decision to terminate his employment. Plaintiff has not demonstrated any

weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in Defendants' proffered legitimate reason for its actions. *Keller,* 130 F.3d at 1108-09. It is undisputed that Plaintiff's job functions were eliminated as a result of the integration. Accordingly, summary judgment will be granted to Defendants on Plaintiff's claim of age discrimination.

## CONCLUSION

For the reasons discussed *supra*, the Court finds that Plaintiff has not shown by any evidence that Defendants intentionally discriminated against him because of his age. Therefore, the Motion for Summary Judgment filed by Defendants will be granted in its entirety. An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WALTER L. ESHELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:03cv1990 |
| | ) | |
| MAGEE WOMENS HOSPITAL OF | ) | |
| UNIVERSITY OF PITTSBURGH MEDICAL | ) | |
| CENTER, UPMC AND UPMC t/d/b/a/ | ) | |
| UNIVERSITY OF PITTSBURGH MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF COURT**

**AND NOW**, this 11th day of October, 2005, in accordance with the foregoing

Memorandum Opinion,  it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that

the Motion for Summary Judgment filed by Defendants Magee Womens Hospital of University

of Pittsburgh Medical Center, UPMC and UPMC t/d/b/a University of Pittsburgh Medical

Center (Document No. 17) is **GRANTED** and judgment is hereby entered in favor of

Defendants Magee Womens Hospital of University of Pittsburgh Medical Center, UPMC and

UPMC t/d/b/a University of Pittsburgh Medical Center.


BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:        Joel S. Sansone, Esquire
              Scanlon & Sansone
              Email: joelsansone03@msn.com

              Eric P. Reif, Esquire
              Pietragallo, Bosick & Gordon
              Email: epr@pbandg.com

              Pamela G. Cochenour, Esquire
              Pietragallo, Bosick & Gordon
              Email: pgc@pbandg.com